When you're ready. Your Honor, may it please the Court. Good morning. Good morning. I'm sorry? Your Honor, may it please the Court. The decision below should be remanded and Mr. Bearchild given a new trial. You're doing just fine. May it please the Court. My name is... My good morning threw you off. Sorry. It did. I didn't want to bore the Court. Your Honor, may it please the Court. My name is Katherine Cherry and I represent Mr. Bearchild in this case. The decision below should be remanded and Mr. Bearchild given a new trial due to fundamental charging errors in the jury instructions that were presented by the District Court. In addition, Mr. Bearchild's inability to call a key witness, Ms. Sarah Simmons, also resulted in his inability to put on his case and have a fair trial. The two jury instructions that are at issue in this case are Instructions 10 and Instructions 12. Well, let me ask you about Ms. Simmons being a key witness because he was representing himself at that time and you're, you know, and we thank people for doing pro bono work and you're handling this pro bono on appeal. But you have to put yourself in the position of, you know, if you are a trial judge and you have a pro se litigant, you know, there's certain things you don't make their life harder, but you can't try their cases either in terms of you have to rely on, you have to respect their autonomy and statements that they make. And so you now designate Ms. Simmons as a key witness, but in the District Court, Mr. Bearchild referred to Mr. Ball as his main witness and the Court made an accommodation for Mr. Ball to testify. So you, you know, the trial judge has to respond to what's in front of him or her at that particular time. And also we know of Ms. Simmons that she wasn't, there were prior statements that she had given where she claims that she hadn't seen certain things. So why should we let you now recharacterize his position that she was just a witness, not his key witness or main witness, and then you get to completely, you know, make a different argument here that if he had said that to the judge, the judge might have responded differently. To break that question into a few, Your Honor, the first question is, was Ms. Simmons as important as I say Ms. Simmons is on appeal? And I think that she was, Your Honor. Mr. Bearchild in every witness list and every document from his complaint on mentioned Ms. Simmons as the person who was there and who observed. But you have statements of her. What did she, she didn't see much. We do have statements, but I think it would have been important in this case to have follow-up to those statements. For example, Ms. Simmons said she saw the, she saw the pat-down and then she left and Mr. Bearchild seemed upset. What we don't know is how often did Mr. Bearchild seem upset after pat-downs. Maybe this was something that he did every single time, but more likely it's something that was unique in this particular situation. In addition, we don't know how long she was waiting outside. Okay. But he's representing himself. So, and that was in the context of a continuance. You know, what did he want a continuance for and how did the court respond to that and how did the court, you know, the court took him at face value that he had presented some subpoenas and then said, and your client at first said, I have to go to trial right away. And then when he finds out that no one's there, he goes, oh, my gosh, I'm, you know, this is terrible. I'm done. I'm cooked, as it were. And so then the trial judge, albeit not perhaps ideal, says, okay, what can we do to get people here and still have your trial? And he says Ball is his main witness. So, Ball, he makes arrangements and perhaps tells the Department of Corrections, hey, if you want to go ahead right now, then you get this person in and all of that. And your client knew that he had to pay for Ms. Simmons to be there and he hadn't done that. And I don't find anything, you know, the court can't pay for that. There's nothing, you're not asking the court to pay for that. So, I'm just, you know, I'm trying to put myself in the trial judge's position so that now that you can recharacterize that it's a completely different situation and she was key and that further investigation should have been done, which the court couldn't. There were two statements that had already been taken from her. The court couldn't have said, okay, well, now, right now, I want to order the Department of Corrections to go out and take more statements on Mr. Baerchild's behalf. Could they, could the court have done that? No, Your Honor, but I think what... Well, this is an abuse of discretion standard, right? We think this is an abuse of discretion standard, yes. Are we going to talk about the instruction 12? We are going to talk about the instruction 12. I have a lot of concern about instruction 12. Do you have any further answer you wanted to give to Judge Callahan's question? I did, yeah, if that's okay, Your Honor. So, I would say that the district court actually knew prior to the day of trial that Mr. Baerchild had not submitted a subpoena. If you look at, well, obviously first on the day of the trial, he admits that he knew that Mr. Baerchild hadn't submitted a subpoena and was concerned about how Mr. Baerchild would have witnesses and, more specifically, how he would get his... And the court went out of his way to get some of the witnesses lined up for him to testify from prison. He did. And this is an abuse of discretion standard. Well, we think that just as in cases like Rand v. Roland and Woods v. Carey where the court found that it was important to have the district court tell the litigant, the pro se inmate at the time when the issue arose, that here the district court could have reached out with regard to the scene when they did. It's an abuse of discretion standard and you have less than 10 minutes. Can we talk about the instruction, please? Sure. Great. Let's talk about Instruction 12, please. I have a lot of concern about this instruction. You seem to think it's a causation issue. I'm concerned that this instruction is contrary to our case law, and Wood and Choink in particular, that establishes pretty much, establishes that when there's a sexual assault in prison, there's an Eighth Amendment violation. Yes, Your Honor. And we think so, too. Importantly here, the jury was never asked the simple question of whether or not there was a sexual assault. Instead, they were led to believe with elements that... Well, they were, right? Thirteen. Isn't Instruction 13 the definition of sexual assault that you stipulated, too, that comes out of the Prison Rape Elimination Act? So Instruction 13 does describe the regulation from the PREA. Was that a yes? Is that right? Am I... Yes. That's a yes, but the jury did not have any... The jury instructions didn't close the loop as to how the jury would apply whatever it learned from Instruction 13 to Instruction 12. Was there a special verdict from counsel or any instruction that said if you find a sexual assault, that is, if you find that Instruction 13 is satisfied, you don't need to make these findings in Instruction 12? No, Your Honor. The verdict just said if you find for the defendant, check this. If you find for the plaintiff, check that. So here, we really don't know how the jury interpreted Instruction 12, but we do know that the elements here are foreclosed by this Court's precedent. And I think in this case, you can tell that there's error because... And significant error because this is a person who had several similar complaints about him in 2013 to the point that the jail sent him back for remedial training. We also... The jury had in front of it several PREA reports of similar conduct. The guards joked about the search, and they testified to this during... Or they indicated this during the PREA investigation. Did the jury hear all of that? The jury had this in the documents that were submitted to it. So the jury got to consider that? Right. And so what we would argue is that if the jury had been able to consider that with the correct instructions, they would have come out in favor of Mr. Baerchild, or at least there's a significant chance that they would have come out in favor of Mr. Baerchild. And so we would argue that in the case of the 28J letter, the ideal instructions would ask if there was a sexual assault while allowing for the fact that there has to be some... Can I just break that down? So you had Instruction 13, and I think you stipulated to the definition of sexual assault from the Prison Rape Elimination Act, right? We established that. Counsel, is that a yes? I'm not trying to... These aren't trick questions. I'm trying to follow you. Okay. Fair enough. So if there's an instruction... Let's say for a minute, there was an instruction that you're not really challenging, I don't think, about the definition of sexual assault, and then had the jury found sexual assault, what should Instruction 12 have said? I think that Instruction 12 should have simply said, if you found sexual assault, it's an Eighth Amendment violation. It didn't need to add all of these extra elements to do so, because under our case law, excessive and necessary force, malicious and sadistically, are all part of the assumptions or part of the definition of a sexual assault. So tell me how... Sort of when I fundamentally look at how the parties presented what had happened, you have the Department of Correction saying that if there's a sexual assault, it's an Eighth Amendment violation. It was a search. And you have, I think, was it two of them? Or how many... Oh, two inmates who were searched? Well, no, but they have... How many... We don't have Ms. Simmons, but were there five people that were actually called as witnesses that had witnessed this particular thing? So I don't think all of the witnesses were called. I don't know who was called, Lieutenant Zuber, to demonstrate, but yes. Okay, so they say that there's a penological reason for what, why they did this, and that it was a... And they say what happened. And your client and his, and Mr. Ball, described the event differently and how he felt about this. So I find that if they had believed your client that the officers did this either for harassment, embarrassment, or fondling, or any of the allegations that your client said, why couldn't, under these instructions, couldn't they have found for your client? Because it seems to me that it was a pretty... It really pretty much came down to if you believe the officers that they were doing it as part of what their search procedures are and all of that. And I think that the one that Mr. Pasha said, that he felt something in the waistband, and that he felt compelled that he had to look forward. And the defendant said that it was his penis, so he asked him to pull it out, he pulled it out, and then that. So, and then we have the defendant's side of what, how he felt about it. To me, if they believe the officer that he's doing it for that reason, and he had another person there, then I think your client loses. If they believed your client, then I think under these instructions, your client would have won. I don't believe, that's what I'm saying, I don't think a jury would condone this activity if it were for harassment, embarrassment, or sexual satisfaction. Would they do that? So I guess that's the, if the instructions weren't perfect, how do you show that it prevented your client from winning? We presume that a jury follows the instructions in the case, and here the instructions would have required them to find these other things. And as it would be well clear, the court is concerned about, and in the Tenth Circuit case here in Redepartment of Corrections, the court is concerned about how a jury would come out on these things. Wait, wait, wait, right there, I think Judge Callahan's getting right to it. We do presume the jury follows the instructions, they had both instruction 12 and 13, and we read the instructions as a set, we read them as a whole. Is there anything wrong with instruction 13, which is the definition of sexual assault? Sexual abuse, actually, forgive me. Sorry, not other than what we discussed before. Well, 12 is the one that I have a lot of problem with, because it seems to, well it does expressly, tell the jury that they should consider the extent of the injury suffered and the need to use force. Those elements, those considerations are contrary in my view, quite contrary to our decisions in Wood and Schwenk. The jury also had instruction 13. Yes, Your Honor, but... What do we do with that, counsel? So, if we look at instruction 11, R15, instruction 11 warps the jury that they need to find that Mr. Behrchild proved the elements in instruction 12 in order for Mr. Behrchild to win. Instruction 13 just gives you a definition, but it doesn't inform the jury about how to apply the definition. And if the jury is following the jury instructions, there would really be no room to apply that definition. And as we said from before, the verdict form just says defendant or plaintiff. It doesn't say, do you also think there was a sexual assault, and some other instructions got you hung up on that. So, 11 says in order to prevail on the 1983 claim against the defendants, Mr. Behrchild must prove each of the following. And then it says if you find that he's proved each of these elements, and if you find that he's proved all the elements required under 12, you should find a verdict for the plaintiff, but it doesn't direct them to instruction 13. That's your argument? Yes, in terms of, it doesn't close the loop with instruction 13. Okay, thank you. Or to state it differently, I think what you really want is to say if you find under instruction 13 sexual abuse, you're done. You're done. You win. Right, that would be the idea. And the section, instruction 12 takes them down a garden path where they're invited to ask whether or not there was a malicious and sadistic act, even though for our law, sexual assault is by definition such. Yes, Your Honor. They're invited to bring their own definitions to that, even though we've independently defined it. Yes, Your Honor. If there are no further questions, I'll reserve the rest of my time for rebuttal. Thank you. Good morning. May it please the Court. Your Honors, I'm Kirsten Madsen. I'm an Assistant Attorney General for the State of Montana, and I represent Sergeant Pasha. We ask that you affirm the jury's verdict in this case. The jury was correctly instructed, and there was no abuse of discretion. Well, 12 is kind of patterned from a model jury instruction for excessive force. And so why shouldn't the jury instructions be different when you're talking about a sexual assault, not excessive force alleged? It seems that some portions of the model instruction for excessive force were irrelevant here because the incident was not a situation where the officer was using physical force to control a potentially dangerous situation. You know, why couldn't the jury have been confused with some of those factors? Well, I think that it's important to distinguish between the three elements that he must prove in order to prevail, which is what the instruction directs the jury to do, and the elements that they can consider. I also think that element number two, which is the malicious and sadistic, as opposed to a good faith effort to maintain order and restore discipline, is important because it covers both theories that were presented in this case. This court has said that if there was a sexual assault, that they can presume malicious and sadistic intent. Sergeant Pasha's theory in this case, however, was that he... But right there, now you're referring to instruction 12, the jury's instructed in order to determine whether the defendant acted maliciously and sadistically, the jury was to consider the need to use force, the relationship, all of these. You think all of this is important? Sorry, relevant? I certainly argue that it was relevant, but I do think that for purposes of this discussion, what I was trying to draw your attention to is the difference between an element and a factor that they could consider as opposed to have to prove. Well, I know, and I think you're using elements two different ways, so could you back up and explain this again, your argument? Sure. With regard to element number two, the malicious and sadistic and good faith... Instruction 12? Yes. Okay. Yes. The plaintiff's theory was that he was sexually assaulted, as I was saying, and this court has said that if sexual assault is established, that we can presume malicious and sadistic intent. Sergeant Pasha's theory in this case, which was presented and reviewed multiple times, and that was the crux of most of the cross-examination in this case, was that he was doing his job, and that his job required him to put his hands on the inmate's groin. In fact, he had to deliberately pass his... Absolutely, and so it's a question of, unlike other cases, I mean, in prison, guards are allowed and required to touch people in places that would not be tolerated in any way. It's incredibly intrusive, we understand that, absolutely, but I don't know where the jury was instructed anywhere in this case. It's tricky, because some touching was clearly permitted by the guard and probably required by the guard, and then the question is scope and intent, right? Correct. How long did it go on, and what was it for? Was there fondling, was there groping, and so forth? Where is the jury told that? Well, there wasn't a specific instruction on the theory that... Right. No force is required in this case. That's Judge Callahan's point. In order to exceed the scope of a permissible touch, right? In order to exceed the scope of the legitimate penological purpose, no force is required. Well, that is correct. I would point this Court's attention to the fact that while sexual assault, if it is established, does result in an Eighth Amendment violation, but not all Eighth Amendment violations are sexual assault, and with a pro se party on the other side, it's a little bit of a tricky situation, right? You want to do enough to protect your own client from prejudice without arguing the other side's case. I appreciate that, and I also want to say, and we're all mindful, that there's no model instruction here. There's also a very conscientious judge. Nevertheless, here we are, and it is our job to help walk through this and figure out maybe there should be a model instruction. And this feels like a square peg to me, a round hole. These feel like really different, especially in light of Wood and Schwenk. Yeah, and I think that the existing case law on this is, frankly, it's not, it doesn't answer the question in this case. I'm not sure it doesn't. Why not? Our case law says if there's a sexual assault in prison, that's an Eighth Amendment violation, and you don't have to find these elements here. They're satisfied. Well, I think that you can consider, however, the factors, not the elements, the factors at issue with regard to Sgt. Pasha's conduct. To determine whether there's a sexual assault. Because it's not a sexual assault if he's doing it for his job. Correct, correct. Where's the instruction that tells the jury how to parse that? Well, I don't think there is one. And the point I think I was trying to make, and perhaps I missed the mark, it seems, is that Mr. Baerchild's case was a bit discombobulated. You know, he did his best, but there was a number of theories as to what constituted the Eighth Amendment violation. There was his pretrial version and the trial testimony of Mr. Ball. There was his pre-trial version, and then there was also the subject of his entire redirect and most of his cross-examination, which was whether there was a policy violation, not with regard to five minutes of stroking and fondling during a pat search, but with regard to the instruction to pull out his waistband. And that, I think, was an issue that was sort of peppering all over the trial. And so, I can't argue Mr. Baerchild's case for him, but it is nevertheless true that if he failed to establish a sexual assault, there was still this other issue that was sort of peppering all over the trial. And so, I can't argue Mr. Baerchild's case for him, but it is nevertheless true that if he failed to establish a sexual assault, there was still this other issue looming around the case with regard to the policy on having the inmate conduct what Mr. Baerchild suggested that he had to expose himself, but other people characterized it as partial unclothed body inspection. Here's my problem as best I can state it. It reiterates some of the things that have already been expressed by my colleagues. The instruction given, that is to say 12, clearly was not tailored for what we have here in front of us. I have to find liability, I have to find excessive and unnecessary force, I have to find malicious and sadistic and harm. Now, let me go through those one by one. Excessive and unnecessary force, this is a fondling case. I mean, I'm not even sure we can talk about force meaningfully at all, let alone excessive force. But the jury is told they have to find excessive and unnecessary force when the testimony by the plaintiff really didn't involve force at all. It involved some sort of coercion, like you have to do this, but as we would ordinarily use the term force, I don't think there was force. Second, acted maliciously and sadistically for the purpose of causing harm. Well, we say that sexual assault necessarily includes that, but the jury doesn't know that. And finally, caused harm. Well, harm, what do we mean harm? Was he physically harmed? No. Maybe the jury thinks that physical harm is necessary. I mean, all three of these are potentially very misleading. How do you respond to that? And the jury is told they have to find all three. Can I pile on before you answer? I think it's even a little worse because on harm, the last point Judge Fletcher mentioned, the jury is instructed when considering whether that element they had to consider the extent of any injury suffered. I guess, did you ever argue that the fact that he had no injuries, that he wasn't entitled to win? Is this excessive and unnecessary questioning? Well, certainly not, Your Honors. I will attempt to answer them all and we'll see how well I do. To your question, I did argue that he did not establish that he was injured and that that was a factor that they could consider. To the first point, with regard to the first three elements, I would just point out with regard to element one, the excessive and unnecessary force, they did not appeal that specific portion of this instruction. Nevertheless, to your question, I think that the issue is whether the force, which of course is an imperfect correlation for this specific case, exceeded the scope. And those, I think, are again covered with regard to the factors, for instance, the relationship between the need to use it and the amount that was used. But wouldn't it be, okay, I could see that force is, if you touch someone and they don't want to be touched and you don't have a good reason to touch them, I could see where that could be force. I mean, you're forcing yourself on, you're touching someone in a way, but the injury part of it, it would seem to me, if you had guards, if you had a guard that was going around and asking people to pull their pants down or checking their pants and touching them and it didn't appear that they, under circumstances that they needed to be searched, that person arguably would not be physically injured. They wouldn't have to scratch them, cut them, do any of those things. But I'm pretty sure that's a 1983 violation. I mean, would you, you don't think it is? They have to injure their testicles or something while they're doing this or what? No, I don't think it's quite that definitive. It kind of bothers me that you argue that they had to injure them. If I could just get to your first point and then I'll come back to this. To the first question with regard to whether the, you know, just any application of force, I think the context of this case is that it's in a prison where there's a multitude of unwanted contacts, right? The inmates are not, I think if you ask most of them, they would say they don't want to be touched. Nevertheless, we do require that of correctional officers, and so I think the context matters. Now, with regard to the specific injury discussion in this case, the fact of the matter is injury and harm are imperfectly correlated as same with injury and force. Nevertheless, the total absence of an injury is, it's one thing that a jury can consider, and that's what it says here. It's one thing among at least five different things that they could consider, and I thought it was important. That's part of the reason that I argued it to the jury, and it's the reason that it was discussed with a multitude of people. But Mr. Berthold had... Well, I was concerned with the idea that there might be left on the table because of all the discussion of the pulling out of the waistband, when up until that point we'd been discussing the five minutes issue. I was a little bit concerned that we might be getting a field of that, that now we might be talking about whether Sergeant Pasha used, exceeded the scope of force that he needed to do, and that this pulling out of the waistband for this partial unclothed body inspection was somehow improper. And for that reason, I think that now we're getting into whether the injury was, I think, becomes even more relevant. Was the jury in any way told that harm for purposes of liability here goes beyond physical harm and include things like humiliation? Because if the story that Mr. Berthold tells is true, what's happening here is the guard is trying to humiliate him and do so sexually. The guard is not trying to cause him physical harm, he's trying to cause him psychological harm. Was the jury ever aware that that was a permissible or included part of the definition of harm? Not expressly, although Mr. Berthold did argue directly to the jury that it offended his dignity, and I suspect he probably was quoting directly from prior orders in the case that outlined that that was cognizable as harm within the meaning of the liability of question. No, there was no other additional instruction on harm. This comes right in, and since you're, I think, very stalwart in answering, I don't even know how you're keeping track of our questions. I'm not sure I've answered them all. No, you're doing great. So since you're doing so well, I'm going to just exceed the scope of the briefing entirely here. Good. Because I am really interested in this. You stipulated, I think the two of you, to Instruction 13, and for purposes of this trial, sexual abuse was defined in accordance with the Prison Rape Elimination Act, which doesn't include humiliate. You would have to show that a staff member has the intent to abuse, arouse, or gratify sexual desire. Correct. And it also includes touching in very specific, I'm going to just say intimate body parts for purposes of speeding my question along. I'm not so sure in this day and age, since we're talking about the Eighth Amendment, if this is the right definition at all. I just want to give you a chance to, albeit on your feet, to respond. It's easy to imagine a prison guard in a hypothetical case caressing a prisoner's face or hair in a way that I would think would be sexual assault by today's standards. But that's not covered by this definition. So where did this one come from? Why was this used here? The specific source for it is the CFR definition under PREA. The reason that I asked for it and that it was stipulated to is because we had introduced a number of investigations regarding Sergeant Pasha under PREA, and I thought that the definition of what constituted sexual abuse was important for the jury to be able to put those in context. Okay, so can I ask the question about what would the State's position be, if you can tell me, about a hypothetical where a prison guard strokes a female prisoner's, let's just make it as sexist as possible, since it's a hypothetical, a male guard stroking, caressing a female prisoner's face or hair, is that sexual assault? It would be hard for her to prove it, but if she could prove it was for gratifying sexual desire, would that count? I don't think that, I'm not aware of a definition of sexual abuse that would include that. I think that it has to be an intimate body part. Under the definitions that I'm aware of, for instance, under Montana State law or under federal criminal law, I think all are specific to... Right, so if we adopt a definition, should that be included? Should which piece of that be included? Well, I'm just wondering, there's two parts to this. One is that the current definition, the one you've used, only includes very intimate body parts, not a face, not stroking someone's hair or caressing someone's hair. The other part that it leaves out is that it is limited to abusing, arousing or gratifying sexually. It doesn't include humiliation. And in this case, the allegation was that it was done to humiliate. Should the definition be expanded to include those things as Eighth Amendment violations? I don't think so. I think that the Supreme Court has said pretty clearly in a multitude of Eighth Amendment cases that the question is the intent to harm, and that the harm can include humiliation when it involves the intimate parts of a person's body. But there are, unfortunately, a number of aspects of being incarcerated that are humiliating. They're not, I don't think anybody enjoys it. But wouldn't a prisoner, and then I'll let you go, but I promise, you're probably going to want to get on a plane back to Montana quickly, but a prisoner would have to show, under this hypothetical, that her hair was, or her face was, you know, I can't see any circumstance where a legitimate penological objective is served if it's for the purpose of sexual desire. Yeah, no, I think if they can establish that it's for the purpose of sexual gratification, we've entered a different zone. Part of my hang-up is that I'm thinking of part of a clothed body search can include an inspection of someone's hair. But not for purposes of gratifying sexual desire. Correct. Okay. So how did all of the other investigation of Pasha come in? Did you just turn those over to him and not object to them coming in, or did he advocate for it? How did that come? It was sort of awkwardly, Your Honor. I did oppose it. I filed a point brief on it. I argued it orally to the court. We had spent a number of briefing rounds discussing whether there was going to be a protective order to protect the inmates who are coming in over my objection after I had started my case. And so it was... So the court, sounds like it, did Mr. Behrchild ask for those, or did the court on its own just say, well, I think this should come in? He had been asking for them for quite some time. I mean, it was a serious bone of contention whether he was going to be able to know who these inmates were, whether he was going to be able to call them as witnesses. I think he was just summarizing. His argument wasn't quite that complete, but that to me was the thrust of what he was getting at. And he had said a couple of times that he had kept referring to... And I think during the pretrial conference the court had said, well, I have determined that I might admit some of these and not others. And throughout Mr. Behrchild's testimony he had made reference to the stack of papers at my table and things of that nature. Okay. Thank you. Could you please put two minutes on the clock? Thanks. And to just address two points, unless the court has any questions. The first is, as you were discussing force, opposing counsel conceded that no force is required for a sexual assault. And here, as was already noted, the jury was informed that they should consider whether or not there was a physical injury to Mr. Behrchild. What I wanted to emphasize is the jury really needed to disagree or find that Mr. Behrchild had improved at least one of these elements for Mr. Behrchild. So whether it was malicious and sadistic, or whether it was harm, or whether it was the force requirement, really the jury only had to find that Mr. Behrchild didn't meet the requirements for one of those elements. With regard to the other point you made about whether this is just humiliation, or whether it was more... I, of course, can't find it in the record, but Mr. Behrchild did allege that he believed that the source of the sexual assault was because he had mentioned before that he had never been sexually assaulted. He had no problem with his gay roommate. It was something that he thought was the source of the sexual assault. And I would also say that he was referring to the fact that this bothered him because of his prior sexual abuse as a child. And so I don't think that, although it's not entirely clear in the pleadings, but I don't think that Mr. Behrchild was just saying that this was done for humiliation. I think he also thought that there was a sexual gratification component. The Court has no more questions. Thank you very much. The case Behrchild v. Cobb been submitted, but before we break, I'd like to say thank you very much. You've done this pro bono. We very much appreciate this. This is very helpful to the Court. You've done a lovely job. You have, too, but you're being paid. I would also like to thank her.
judges: W. Fletcher, Callahan, Christen